UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| JASON DEWAYNE PUCKETT | CIVIL ACTION NO. 18-552-P |
| VERSUS | JUDGE FOOTE |
| BOSSIER MAX FACILITY, ET AL. | MAGISTRATE JUDGE HORNSBY |

REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Jason Dewayne Puckett ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on April 20, 2018. Plaintiff is incarcerated at the Bossier Maximum Security Center in Plain Dealing, Louisiana, and claims his civil rights were violated by prison officials. He names the Bossier Max Facility and the Bossier Max Infirmary as defendants.

Plaintiff claims that on March 23, 2018 at approximately 2 a.m., he noticed patches of itchy, inflamed skin similar to hives. He claims that at pill call between 7 a.m. and 9 a.m., he informed Nurse Katey and Deputy Smith about the rash and insisted that he be taken to the medical department for further examination because he believed he was having an allergic reaction. He claims Nurse Katey told him that she would put him on the list to see medical. He claims that when the lunch trays came between 11 a.m. and 1 p.m., he

asked Deputy King and Deputy Pease to remind Nurse Katey to see him in the medical department. He claims that when the dinner trays came between 4 p.m. and 5 p.m., he asked Deputy Pease and Deputy Lopez to remind Nurse Katey to see him in the medical department. Plaintiff claims that at the 9 p.m. pill call, he still had not been seen by the medical department. He claims he showed the Officer the spreading rash. He claims the Officer took him to the medical department and he was given two Benadryl tablets. Plaintiff claims he suffered through the night with the itchy rash.

Plaintiff claims that during pill call the next morning, he was given a steroid shot. He claims he continued to suffer throughout the day. He claims that during the night pill call, the Officer took him to the medical department and it was decided that he should be transported to the hospital.

Plaintiff claims he was transported to University Health and diagnosed with an allergic reaction induced by Bactrim and Tegretol. He claims he was given a shot of Benadryl, Pepcid, and an IV steroid. He claims he also had bloodwork performed. He claims he was prescribed a steroid, an antihistamine, and Pepcid. He claims he was returned to the prison at approximately 6:30 a.m. He claims he was not given the antihistamine until 10 p.m.

Plaintiff claims that on March 26, 2018, the rash returned and covered his face, head, and neck. He claims Deputy Davis decided to transport him to the hospital. He claims his throat began to swell and he had difficulty swallowing. He claims he was treated by the medical staff at the hospital and told to take a Benadryl every four hours until his prescription was filled.

Plaintiff claims he returned to Bossier Max and went to the medical department at approximately 11 a.m. He claims Nurse Jessica examined him and found that he was improving even though he was still covered in the rash and she had not seen him at the onset of the rash. He claims he was then seen by Dr. Roberts and Nurse Katey. He claims Dr. Roberts did not conduct an examination. He claims he informed Nurse Katey about the medication prescribed by the hospital staff. Plaintiff claims Nurse Katey informed him that he would receive the steroid prescribed on March 24, 2018, and not the stronger antihistamine.

Plaintiff claims that on March 26, 2018, he was only given two Benadryl tablets. He claims that on March 27, 2018, the rash returned. He claims he was taken to the infirmary and Nurse Jessica gave him two Benadryl tablets.

Plaintiff claims that when he returned to his cell, he completed a grievance regarding the medical department refusing to see him on March 23, 2018, and denying him the medication prescribed at the hospital. He claims the staff justified not seeing him on March 23, 2018, because he did not write a medical kite. He also claims the staff stated they were following the orders of the prison doctor regarding his medication.

Plaintiff claims the medical staff then spoke with Lt. Porter about the grievance and moved him to a camera cell for observation. He admits he continued to receive the medication as directed by the prison medical staff.

Plaintiff states that on March 28, 2018, during pill call, the Officer looked at him and took him to the medical department. He claims he was given a steroid shot and a Benadryl shot. Plaintiff claims that if had been given the medication prescribed by the

hospital doctor, he would not have needed the shots. He claims that approximately 30 minutes later he was given the medication. He claims that after two hours, he began to improve.

Plaintiff claims he has had no more medical visits. He claims he has not experienced any health problems since he started the medication originally prescribed.

Plaintiff claims Lt. Parker did not properly investigate his grievance.

Accordingly, Plaintiff seeks monetary relief.

## LAW AND ANALYSIS

**Medical Care**

Plaintiff claims he was denied proper treatment for an allergic reaction. Specifically, he claims he was not seen in the medical department for his rash on March 23, 2018 until after 9 p.m. He claims he was not given the medication prescribed by the hospital doctor in the manner that it was prescribed.

Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v.

Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994).  It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment.  Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976).  Further, the plaintiff must establish that the defendants possessed a culpable state of mind.  See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84.  A delay in medical care will violate the Eight Amendment only if the delay is based on deliberate indifference and results in substantial harm.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).  In addition, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

     In this case, after a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs.  To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff.  It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs.  Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997); Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).  Plaintiff admits that on March 23, 2018, he was taken to the medical department and given two Benadryl tablets.  He admits that the next morning he

was given a steroid shot. He also admits that he was transported to the hospital twice and treated. Plaintiff admits that when he was returned to the prison, he was examined and given Benadryl tablets and shots and steroids as directed by the prison medical staff. Plaintiff complains that he should have been given the medication prescribed by the hospital doctor in the manner it was prescribed.

In <u>Stewart v. Murphy</u>, 174 F.3d 530, 535 (5th Cir.1999), the Fifth Circuit found that the failure of a prison doctor to follow the recommendations of an outside treating physician did not present a material fact issue for deliberate indifference. Rather, it indicated that the doctors had differing opinions as to the appropriate method of treatment under the circumstances. Therefore, the medical staff at Bossier Maximum Security Center was under no obligation to follow the recommendations of the non-prison physician. Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton." Plaintiff does not allege how the alleged delay in receiving medical treatment on March 23, 2018 was based on deliberate indifference.

Plaintiff disagrees with the treatment Defendants provided him. He claims he should have been prescribed different medications. As previously discussed, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort. However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do

not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988). The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992).

Accordingly, Plaintiff's medical care claims should be dismissed with prejudice as frivolous.

**Administrative Remedy Procedure**

Plaintiff claims Lt. Parker did not properly investigate his grievance. Inmates do not have a constitutionally protected right to a prison administrative grievance procedure. See Oladipupo v. Austin, et al., 104 F.Supp.2d 626 (United States District Court, Western District of Louisiana 4/24/00); Brown v. Dodson, et al., 863 F. Supp. 284 (United States District Court, Western District of Virginia 6/2/94); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). A prison official's failure to comply with a state administrative grievance procedure is not actionable under Section 1983 because a state administrative grievance procedure does not confer any substantive constitutional right upon prison inmates. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), cert. denied, 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231. Furthermore, state administrative grievance procedures are separate and distinct from state and federal legal procedures. Thus, a prison official's failure to comply with state administrative grievance procedures does not compromise an inmate's right of

access to the courts.  Flick, supra.  Thus, insofar as Plaintiff alleges that the Defendants failed to comply with the prison administrative grievance procedure, those allegations, standing alone, do not provide an arguable basis for recovery under Section 1983.

Accordingly, these claims regarding the administrative remedy procedure should be dismissed with prejudice as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed.  See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).  District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact.  See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another

party's objection within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See <u>Douglas v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 25th day of June, 2018.

Mark L. Hornsby
U.S. Magistrate Judge